Argued and submitted November 24, 1982, reversed and remanded March 23, 1983

In the Matter of the Marriage of

**MILLER,**
*Appellant,*
*and*
**MILLER,**
*Respondent.*

(78-510-E-3; CA A25041)

660 P2d 205

Thomas C. Howser, Ashland, argued the cause for appellant. On the brief were Judith H. Uherbelau, and Cottle & Howser, Ashland.

Allen G. Drescher, Ashland, filed the brief for respondent.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman,* Judges.

NEWMAN, J.

---

* Newman, J., *vice* Joseph, C. J.

NEWMAN, J.

Mother appeals from an order denying her motion for change of custody and reinstatement of support payments for her daughter.

The parties were married in 1961. A decree of dissolution was entered on September 26, 1978, awarding custody of two children, Sharon, then 16, and Kevin, then 10, to mother. The decree ordered father to pay $250 monthly for the support of each child so long as each "shall remain a minor or a child attending school and shall not otherwise become emancipated, whichever shall first occur * * *." In September, 1981, father moved to modify the decree to change custody of Sharon to him. Sharon, then 19, was not named as a party. She stated by affidavit accompanying father's motion that she was attending the University of Oregon, was being assisted by father financially and believed that it would be in her best interest to be in his custody. In November, 1981, an order was entered awarding custody of Sharon to father. The order did not purport to alter his support obligation under the decree.

After October, 1981, father discontinued paying monthly support for Sharon. She ceased to attend the University of Oregon in January, 1982. On January 25, 1982, mother petitioned that she be awarded custody of Sharon and that father's support obligations be "reinstated." In an affidavit accompanying mother's petition, Sharon stated that she had been a full-time student but father's termination of support had forced her to leave school. At the hearing, Sharon testified that after leaving school she had lived with mother, found employment and worked until she had saved enough money to return to school at Lane Community College in March, 1982. She testified, however, that she would not be able to continue school without support from father.

The trial court denied mother's petition, stating that Sharon had purchased an automobile by borrowing from a relative without consulting her father or seeking his advice or counsel and that she generally had "affected a lifestyle and is living in a manner which would indicate that she is no longer under the control or custody of her parents." Defining "emancipation" as "a release from

parental control," the trial court found that Sharon had become "emancipated" and was no longer entitled to support from father. The court stated that "should Sharon reverse her emancipation status and capitulate to her father's wishes, she would be entitled to further support for college." The court also observed that the decree modification in November, 1981, transferring custody from mother to father, "was a nullity," because Sharon was then over 18, an adult, and, except in cases of incompetency, "there is no provision under the law for one adult to have custody of another adult."

■ ■ We agree that, because Sharon was an adult, the November, 1981, modification giving custody to father was a nullity. For the same reason the court could not transfer custody of Sharon to mother. We disagree, however, that Sharon is not entitled to support from father under the decree if she is a child attending school. ORS 107.108. The court could not deny support because it found that Sharon was "emancipated." Accordingly, we reverse and remand.

The trial court interpreted the 1978 decree to mean that the provisions for support for Sharon terminated because she was "emancipated." The decree provided that father would pay $250 monthly to support Sharon "so long as" she remained "a minor or a child attending school and shall not otherwise become emancipated, whichever shall first occur * * *." Although the phrase "shall not otherwise become emancipated" appears to qualify both being a "minor" and "attending school," the reference to "a child attending school" refers to a child between ages 18 and 21. Sharon became age 18 on July 4, 1980. The concept of emancipation has no relevancy to a parent's obligation of school support for a child of that age.[1] Consequently, the reference in the decree to "emancipation" applies only to

---

[1] No reference is made in ORS 107.108 to "emancipation." We think the legislature did not intend the concept of "emancipation" to be relevant to the question whether ORS 107.108 is applicable. See also ORS 109.550 defining "emancipation" for purposes of ORS 109.550 to 109.565. Our understanding of the legislative intent is further confirmed by the 1981 amendment to ORS 107.105(1)(b), which added the following language:

"The court is not required to order support for any minor child who has become self-supporting, emancipated or married, or has ceased to attend school after the age of 18." Or Laws 1981, ch 775, § 1.

the period before a child reaches 18. The trial court erred in determining that father is no longer obligated to pay support for Sharon after she became 18 because she was "emancipated."

■        The phrase "child attending school" in the decree has the meaning given by ORS 107.108(4), which at the time of the decree provided:

> "As used in this section, 'child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment."[2]

Father argues, however, that in addition to the limitations included in the statute he should be able to exercise parental control commensurate with his parental obligation of support. He contends that Sharon's borrowing money without his advice and consent shows that she is living beyond his control and should terminate his obligation of support. We do not agree. In *Smith and Smith,* 44 Or App 635, 606 P2d 694 (1980), we held that a father's support obligation to his 18-year-old son who was attending school within the meaning of the statute was not contingent on the son's visitation with the father. To rule otherwise, "the court would be basing its decision not upon a violation of the decree * * * but upon a value judgment about the interaction between adults." *Smith and Smith, supra,* 44 Or App at 641. Father's obligation is contingent only on the external events enumerated in ORS 107.108(4), to wit: age,

---

[2] The quoted language was the text of ORS 107.108(4) at the time of the dissolution decree. By Or Laws 1981, ch 669, § 4, ORS 107.108(4) was amended to read as follows:

> "As used in this section, 'child attending school' means a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school, community college, college or university, or regularly attending a course of vocational or technical training designed to fit the child for gainful employment. A child enrolled in an educational course load of less than one-half that determined by the educational facility to constitute 'full-time' enrollment is not a 'child attending school.'"

marital status and attendance as a student at a defined school or course.[3]

Because the order of November, 1981, did not terminate or modify father's support obligation under the dissolution decree, there was no need to "reinstate" that obligation. Mother's 1982 petition was in effect a petition to require father to pay support for Sharon. Because Sharon is over 18, and not in mother's custody, the dispute over support for Sharon as "a child attending school" is really a dispute between Sharon and her father. ORS 107.108(3) provides:

> "If the court provides for the support and maintenance of a child attending school pursuant to this section, the child is a party for purposes of matters related to that provision."

Sharon is, pursuant to this section, a party to this proceeding for purposes of the determination of the support which father is to pay for her. The court on remand has authority to order support from father to be paid to Sharon and not to mother, *Eusterman and Eusterman,* 41 Or App 717, 731, 598 P2d 1274 (1979), and should do so.

It remains to be resolved how much support father owes. It is not disputed that father ceased to make support payments after October, 1981, although Sharon was then in attendance full-time at the University of Oregon. She ceased to attend school in January, 1982, but began full-time attendance again at Lane Community College in March, 1982. Father owes support for Sharon for the period after October, 1981, in which Sharon was a "child attending school." On remand, the trial court should determine

---

[3] "The wording of ORS 107.108 thus creates a possibility of instability of a decree. A child during his 18th and 19th year might not attend school. Under ORS 107.108 the noncustodial parent would have no duty of support that could be enforced by way of an original or modified decree. But the same child might then become a full time student during his 20th year. Under ORS 107.108 the occurrence of this event could reactivate the noncustodial parent's legal duty to support. Noncustodial parents might prefer a regimen in which the limits of their obligation was not dependent on such external events. But ORS 107.108 represents a clear legislative judgment that a child's need for education support up to age 21 is more important than guaranteeing noncustodial parents certainty about the existence or extent of their support obligation for the three years their children are between 18 and 21." *Eusterman and Eusterman,* 41 Or App 717, 724, 598 P2d 1274 (1979).

when Sharon was a "child attending school" within the meaning of ORS 107.108 and on that basis determine the amount of support father owes. *See also Ellis v. Ellis,* 292 Or 502, 508, 640 P2d 1024 (1982).[4]

Reversed and remanded for further proceedings not inconsistent with this decision. Costs to appellant.

---

[4] We do not decide whether father shall pay support for Sharon for the period between her attendance at the University of Oregon and at Lane Community College. Sharon testified that she dropped out of the University of Oregon because father did not provide the support required by the decree.